**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION**<br><br>KELSE LYNN BARTLETT,<br><br>Plaintiff,<br><br>v.<br><br>NOVO NORDISK INC. and NOVO NORDISK A/S,<br><br>Defendants. | **MDL NO. 3094**<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON<br><br>**COMPLAINT AND JURY DEMAND**<br><br>CIVIL ACTION NO.: ________________ |

## SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff named below, by and through the undersigned counsel, files this **Short-Form Complaint and Demand for Jury Trial** against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in **Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")** and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this **Short-Form Complaint** as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

## IDENTIFICATION OF PARTIES

**Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): **Kelse Lynn Bartlett.**

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: **Not applicable.**

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): **Not applicable.**

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: **Not applicable.**

**Defendant(s)**

5. Plaintiff is suing the following Defendant(s) (check all that apply):
   __X__ Novo Nordisk Inc.
   __X__ Novo Nordisk A/S
   _____ Eli Lilly and Company
   _____ Lilly USA, LLC
   _____ other(s) (identify): ________________________________________

**JURISDICTION AND VENUE**

6. City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence): **Everett, Washington.**

7. State where Plaintiff/Decedent was prescribed the GLP-1 RA Product(s) at issue: **Washington.**

8. State of Plaintiff's/Decedent's residence at time of their use of the GLP-1 RA Product(s) at issue: **Washington.**

9. City and state of Plaintiff's/Decedent's residence at time of diagnosis of injury: **Everett, Washington.**

10. Jurisdiction is based on:
    __X__ diversity of citizenship pursuant to 28 U.S.C. § 1332
    _____ other (plead in sufficient detail as required by applicable rules):
    ______________

11. The District Court(s) where Plaintiff might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered: **United States District Court for the Western District of Washington.**

12. Venue is proper in the District Court identified in Paragraph 11 because:
    __X__ a substantial part of the events and omissions giving rise to Plaintiff's claims occurred there
    _____ other (plead in sufficient detail as required by applicable rules):
    ______________

13. If applicable, identify the citizenship of any additional Defendant(s) named above: **Not applicable.**

**PRODUCT USE**

14. Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):
    _____ Ozempic (semaglutide)
    _____ Wegovy (semaglutide)

__X__ Rybelsus (oral semaglutide)
_____ Victoza (liraglutide)
_____ Saxenda (liraglutide)
_____ Trulicity (dulaglutide)
_____ Mounjaro (tirzepatide)
_____ Zepbound (tirzepatide)
_____ Other(s) (specify): ______________________________________

15. To the best of Plaintiff's knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range(s): **Rybelsus (oral semaglutide): approximately July 2023 through November 2023.**

**INJURIES AND DAMAGES**

16. To the best of Plaintiff's knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

__X__ Gastroparesis
__X__ Other gastro-intestinal injuries (specify) **delayed gastric emptying with persistent nausea, bilious vomiting, early satiety, postprandial abdominal pain and cramping, bloating, and constipation, and the sequelae thereof, including an emergency department visit for an adverse reaction to medication prescribed to treat the gastroparesis.**
_____ Ileus
_____ Ischemic Bowel/Ischemic Colitis
_____ Intestinal Obstruction
_____ Necrotizing Pancreatitis
_____ Gallbladder Injury (specify) ________________________
_____ Micronutrient Deficiency
_____ Wernicke's encephalopathy
_____ Aspiration
_____ Death
_____ Additional/Other(s) (specify): ________________________________________

17. Plaintiff's/Decedent's injuries occurred in approximately (month and year): **October 2023 (onset of gastroparesis symptoms); November 2023 (gastroparesis diagnosed on November 7, 2023, and confirmed by gastric emptying study on November 8, 2023).**

18. In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

__X__ Injury to self
_____ Injury to person represented
__X__ Economic loss
_____ Wrongful death
_____ Survivorship

_____ Loss of services
_____ Loss of consortium
_____ other(s) (specify): ______________________________________

**CAUSES OF ACTION**

19. In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

_____ Count I: Failure to Warn – Negligence
_____ Count II: Failure to Warn – Strict Liability
_____ Count III: Breach of Express Warranty/Failure to Conform to Representations
_____ Count IV: Breach of Implied Warranty
__X__ Count V: Fraudulent Concealment/Fraud by Omission
__X__ Count VI: Fraudulent/Intentional Misrepresentation
_____ Count VII: Negligent Misrepresentation/Marketing
_____ Count VIII: Strict Product Liability Misrepresentation/Marketing
_____ Count IX: Innocent Misrepresentation/Marketing
_____ Count X: Unfair Trade Practices/Consumer Protection (see below)
_____ Count XI: Negligence
_____ Count XII: Negligent Undertaking
__X__ Count XIII: State Product Liability Act (see below)
_____ Count XIV: Wrongful Death
_____ Count XV: Loss of Consortium
_____ Count XVI: Survival Action
__X__ Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules): **Counts V and VI: see Attachment "A" (Fraud Supplement). Count XIII: see Paragraph 21 below and Attachment "B" (Washington Product Liability Act Supplement).**

20. If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:

a. Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims: **Not applicable. Plaintiff does not assert a claim under Count X.**

b. Identify the factual allegations supporting those claims (by subsection, if applicable): **Not applicable.**

** Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21. If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:

a. Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims: **Washington Product Liability Act, RCW 7.72.010 through 7.72.070, including RCW 7.72.010(2), (3), (4), and (6); RCW 7.72.030(1), (1)(a), (1)(b), and (1)(c); RCW 7.72.030(2), (2)(b), and (2)(c) (incorporating the implied warranties under Title 62A RCW, including RCW 62A.2-314 and 62A.2-315); and RCW 7.72.030(3).**

b. Identify the legal theories identified in Paragraph 19 above (e.g., negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim: **The following theories are subsumed within, and asserted through, Plaintiff's Washington Product Liability Act claim: negligent failure to warn (Count I); strict liability failure to warn (Count II); breach of express warranty/failure to conform to representations (Count III); breach of implied warranty (Count IV); negligent misrepresentation/marketing (Count VII); strict product liability misrepresentation/marketing (Count VIII); innocent misrepresentation/marketing (Count IX); negligence, including negligent design, testing, research, post-market surveillance, and marketing (Count XI); and negligent undertaking (Count XII). Plaintiff's claims for fraudulent concealment/fraud by omission (Count V) and fraudulent/intentional misrepresentation (Count VI) are not subsumed, see RCW 7.72.010(4) (excluding "fraud" and "intentionally caused harm"), and are separately asserted in Paragraph 19 and Attachment "A."**

c. Identify the factual allegations supporting those claims: **See Attachment "B" (Washington Product Liability Act Supplement), and the paragraphs of the Master Complaint cited therein, all of which are incorporated herein by reference.**

** Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22. If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)? **No. No pre-suit notice is required by statute for the claims asserted herein.**

**RELIEF**

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the Master Complaint, as appropriate, and any additional relief to which Plaintiff may be entitled.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Dated: September 24, 2026

Respectfully submitted,

FARR LAW FIRM, P.A.

/s/ George T. Williamson
George T. Williamson,
FL Bar No. 85585
99 Nesbit Street
Punta Gorda, FL 33950
Telephone: (941) 639-1158
Email: gwilliamson@farr.com

*Attorney for Plaintiff*

**ATTACHMENT "A"**
**FRAUD SUPPLEMENT (COUNTS V & VI)**

1. Plaintiff incorporates by reference the factual allegations in the Master Complaint, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), together with paragraphs 45-59 (gastroparesis), 117-122 (regulatory history of Rybelsus), 153-224 (Defendants' notice of the association between GLP-1 RAs and gastroparesis), 252-418 (Defendants' marketing and promotion, including off-label promotion), and 419-603 (Defendants' failure to warn and deceptive marketing), as though set forth fully at length herein.

2. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Product (Rybelsus (oral semaglutide)) used by Plaintiff.

3. At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiff and her prescribing physicians.

4. Defendants knew or should have known that their GLP-1 RA Products, including Rybelsus, were unreasonably dangerous and caused gastrointestinal adverse effects, including gastroparesis and persistent delayed gastric emptying, of a greater severity, intensity, frequency, and duration than represented.

5. Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6. Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiff and her prescribing physicians to use and prescribe the GLP-1 RA Products.

7. Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

   a. Risk of Severe Gastrointestinal Injuries: Concealing the true risk of severe, persistent, and debilitating gastrointestinal conditions caused by Rybelsus and Defendants' other GLP-1 RA Products, including gastroparesis (delayed gastric emptying) that persists after the drug is discontinued, ileus, and intestinal obstruction.

   b. Inadequate Gastric Emptying Testing: Concealing that Defendants' representations of a "minor" or "mild" delay in gastric emptying were based on inadequate testing (including the acetaminophen absorption test, which measures only the emptying of liquids), and that Defendants knew or should have known that such testing did not reflect the drug's true effect on the emptying of solid food.

   c. Misleading Clinical Trial Data: Concealing that clinical trial participants were frequently treated with anti-emetic medications to manage gastrointestinal side effects, thereby skewing the data and rendering the "mild to moderate" and "transient" side-effect profile reported in Defendants' labeling and marketing materials false and misleading, and

concealing that Defendants performed research, testing, and post-market surveillance in a manner that would lead to under-reporting of the severe gastrointestinal risks of the GLP-1 RA Products.

d. Label Omission: Concealing that, at all relevant times, including when Plaintiff was prescribed and used Rybelsus in 2023, the Rybelsus Prescribing Information and Medication Guide contained no warning or precaution concerning gastroparesis, notwithstanding Defendants' knowledge of reasonable evidence of an association between semaglutide and gastroparesis. See Master Complaint ¶¶ 122, 153-224, 447.

e. "Bogus" Weight-Loss Claims: Concealing that patients are highly likely to regain the weight after discontinuing the drug, that maintaining any weight loss requires lifelong, continuous use of the medication, and that a significant portion of the total weight lost is often lean muscle mass, not fat, which can lead to negative health outcomes.

8. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Defendants made representations in widespread direct-to-consumer advertising for their semaglutide products, including television commercials and product websites for Rybelsus and Ozempic, that patients would lose weight and could "lose weight and keep it off," and, in the case of Rybelsus, promoted weight loss as a benefit even though Rybelsus is not approved for weight loss. These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b. Defendants made misrepresentations to the public and to Plaintiff through their semaglutide advertising campaign, including the widespread "Oh, Oh, Oh, Ozempic" ("Magic") television commercial, which stated that "you may lose weight" and that "adults lost on average up to 12 pounds," see Master Complaint ¶ 350, and which falsely created a misleading impression of the safety profile of Defendants' semaglutide products. While the commercial mentioned common gastrointestinal side effects such as nausea and vomiting, it intentionally minimized those risks by failing to disclose the severe, persistent, and debilitating nature of those symptoms, and it concealed and omitted all mention of serious adverse events that Defendants knew or should have known to be associated with semaglutide, including gastroparesis and persistent delayed gastric emptying. These omissions created a deceptive net impression intended to induce consumers to request Defendants' semaglutide products, including Rybelsus.

c. Defendants made representations to Plaintiff's prescribing physician through sales representatives, medical websites (including NovoMedLink, whose Rybelsus pages omitted any reference to or warning of gastroparesis, see Master Complaint ¶ 602), and other physician-directed marketing that the most common gastrointestinal side effects of Rybelsus, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of short duration. These representations were false and misleading because Defendants

concealed that these side effects were often severe, debilitating, and persistent, that Rybelsus could cause gastroparesis, and that Defendants' clinical trial data was skewed by the undisclosed use of anti-emetic medications.

9. Plaintiff Kelse Lynn Bartlett is a resident of Everett, Washington. On June 28, 2023, her primary care physician at EvergreenHealth Primary Care in Bothell, Washington, prescribed Rybelsus (oral semaglutide), titrated from 3 mg to 7 mg to 14 mg once daily, for weight management in connection with obesity and insulin resistance. Plaintiff filled her Rybelsus prescriptions at a CVS Pharmacy in Everett, Washington, beginning on or about July 2, 2023, and took Rybelsus daily through early November 2023. By October 2023, while taking Rybelsus 14 mg daily, Plaintiff developed nausea and vomiting, which her physician attributed to Rybelsus and attempted to manage with a proton-pump inhibitor and dietary modification so that Plaintiff could continue the drug. By early November 2023, Plaintiff was suffering persistent nausea, bilious vomiting, postprandial abdominal pain and cramping, early satiety, bloating, heartburn, and constipation. On November 7, 2023, Plaintiff was diagnosed with gastroparesis, Rybelsus was discontinued, and Plaintiff was instructed to avoid GLP-1 medications. A gastric emptying study performed on November 8, 2023, confirmed delayed gastric emptying, with 76% of a standard meal retained at two hours (normal range 0-60%) and 38% retained at four hours (normal range 0-10%). On November 11, 2023, Plaintiff was treated in the emergency department at Swedish Mill Creek for an adverse reaction to metoclopramide prescribed to treat her gastroparesis. Plaintiff's gastroparesis persisted after she discontinued Rybelsus and continued to be documented by her physicians in 2024. At no time before or during Plaintiff's use of Rybelsus did Defendants disclose to Plaintiff or her prescribing physician that Rybelsus could cause gastroparesis or persistent delayed gastric emptying.

10. Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false representations that the gastrointestinal side effects of Rybelsus were merely "mild to moderate" and "transient," and the omission of any warning concerning gastroparesis from the Rybelsus labeling and physician-directed marketing. In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising for their semaglutide products, which represented that those products were a safe and effective means of losing weight with only minor and temporary side effects. Relying on this false and misleading net impression, Plaintiff's physician was induced to prescribe Rybelsus and Plaintiff was induced to take it.

11. Had Defendants disclosed the true risk of gastroparesis and persistent delayed gastric emptying, the inadequacy of their safety testing, and the true, qualified nature of the weight-loss benefits, Plaintiff would not have used Rybelsus, and/or Plaintiff's prescribing physician would not have prescribed it.

12. As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for future medical treatment and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

13. As a result of Defendants’ fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**ATTACHMENT "B"**
**WASHINGTON PRODUCT LIABILITY ACT SUPPLEMENT (COUNT XIII)**

1. Plaintiff incorporates by reference the factual allegations in the Master Complaint, including its paragraphs 904-911 (Count XIII), as though set forth fully at length herein. As directed by paragraph 908 of the Master Complaint, Plaintiff further incorporates by reference the allegations of Counts I through XII of the Master Complaint that are subsumed within her Washington Product Liability Act claim, including paragraphs 606-640 (Count I, negligent failure to warn), 641-674 (Count II, strict liability failure to warn), 675-698 (Count III, breach of express warranty), 699-720 (Count IV, breach of implied warranty), 801-824 (Count VII, negligent misrepresentation/marketing), 825-848 (Count VIII, strict product liability misrepresentation/marketing), 849 (Count IX, innocent misrepresentation/marketing), 866-880 (Count XI, negligence), and 881-903 (Count XII, negligent undertaking), together with the factual allegations in paragraphs 45-59 (gastroparesis), 94-104 (ineffectiveness and rebound weight gain), 117-122 (regulatory history of Rybelsus), 153-224 (Defendants' notice of the association between GLP-1 RAs and gastroparesis, ileus, and intestinal obstruction), 252-418 (Defendants' marketing and promotion, including off-label promotion), and 419-603 (Defendants' failure to warn and deceptive marketing).

2. Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants") under the Washington Product Liability Act, RCW 7.72.010 through 7.72.070 (the "WPLA"), including the specific provisions identified in Paragraph 21(a) of the Short Form Complaint, and asserts within this claim the legal theories identified in Paragraph 21(b) of the Short Form Complaint.

3. Defendants are "manufacturers" within the meaning of RCW 7.72.010(2) because they designed, produced, made, and fabricated Rybelsus (oral semaglutide) before its sale to users and consumers, and because they hold themselves out as the manufacturers of Rybelsus. Rybelsus is a "product," and the "relevant product," within the meaning of RCW 7.72.010(3). Plaintiff's claim is a "product liability claim" within the meaning of RCW 7.72.010(4) because it is brought for harm caused by the design, formula, preparation, testing, warnings, instructions, marketing, packaging, and labeling of Rybelsus. Plaintiff has suffered "harm" within the meaning of RCW 7.72.010(6).

4. Plaintiff Kelse Lynn Bartlett is a resident of Everett, Washington, and was a resident of Washington at all times relevant to this action. On June 28, 2023, Plaintiff's primary care physician at EvergreenHealth Primary Care in Bothell, Washington, prescribed Rybelsus (oral semaglutide), titrated from 3 mg to 7 mg to 14 mg once daily, for weight management in connection with obesity and insulin resistance. Rybelsus is approved by the FDA only as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus; it is not approved for weight loss. See Master Complaint ¶¶ 117-122. Plaintiff filled her Rybelsus prescriptions at a CVS Pharmacy in Everett, Washington, on or about July 2, 2023 (3 mg and 7 mg), August 2, 2023 (14 mg), and September 1, 2023 (14 mg), and took Rybelsus daily from approximately July 2023 through early November 2023.

5. By October 2023, while taking Rybelsus 14 mg daily, Plaintiff developed nausea and vomiting, which her physician attributed to Rybelsus and attempted to manage with a proton-pump inhibitor and dietary modification so that Plaintiff could continue the drug. By early November 2023, Plaintiff was suffering persistent nausea, bilious vomiting, postprandial abdominal pain and cramping, early satiety, bloating, heartburn, and constipation. On November 7, 2023, Plaintiff's physician diagnosed gastroparesis, discontinued Rybelsus, instructed Plaintiff to avoid GLP-1 medications, prescribed metoclopramide, ondansetron, and a bowel regimen, ordered a CT scan of the abdomen and pelvis and a gastric emptying study, and referred Plaintiff to gastroenterology and endocrinology. The CT scan performed that day showed no bowel obstruction or inflammatory process that would otherwise explain Plaintiff's symptoms. A gastric emptying study performed on November 8, 2023, confirmed delayed gastric emptying, with 76% of a standard radiolabeled meal retained at two hours (normal range 0-60%) and 38% retained at four hours (normal range 0-10%). On November 11, 2023, Plaintiff was treated in the emergency department at Swedish Mill Creek in Everett, Washington, for an adverse reaction to the metoclopramide prescribed to treat her gastroparesis, and was instructed to discontinue that medication. Plaintiff's gastroparesis persisted after she discontinued Rybelsus and continued to be documented by her physicians as an ongoing condition in 2024.

6. Not reasonably safe as designed (RCW 7.72.030(1)(a)). Rybelsus was not reasonably safe as designed because, at the time of manufacture, the likelihood that Rybelsus would cause gastroparesis, persistent delayed gastric emptying, and similar gastrointestinal harms, and the seriousness of those harms, outweighed the burden on Defendants to design, formulate, dose, titrate, and test the product in a manner that would have prevented or reduced those harms, and outweighed any adverse effect that such a practical and feasible alternative design would have had on the usefulness of the product. See Master Complaint ¶¶ 45-59, 153-224, 866-880.

7. Not reasonably safe because adequate warnings and instructions were not provided at the time of manufacture (RCW 7.72.030(1)(b)). At the time of manufacture, the likelihood that Rybelsus would cause gastroparesis, persistent delayed gastric emptying, and similar gastrointestinal harms, and the seriousness of those harms, rendered Defendants' warnings and instructions inadequate. The Rybelsus Prescribing Information and Medication Guide in effect when Plaintiff was prescribed and used Rybelsus contained no warning or precaution concerning gastroparesis and described the drug's gastrointestinal adverse reactions as generally mild to moderate in severity. Defendants could have provided warnings and instructions that adequately disclosed the risk, severity, and potential permanence of gastroparesis and delayed gastric emptying, the need to monitor for and discontinue the drug upon the onset of persistent gastrointestinal symptoms, and the fact that such symptoms may persist after discontinuation. See Master Complaint ¶¶ 122, 419-567, 606-674.

8. Not reasonably safe because adequate warnings and instructions were not provided after manufacture (RCW 7.72.030(1)(c)). Defendants learned, or a reasonably prudent manufacturer should have learned, after Rybelsus was manufactured and before Plaintiff used it, of the danger of gastroparesis and persistent delayed gastric emptying connected with semaglutide and Defendants' other GLP-1 RA Products, including from pre-clinical and clinical data, adverse event reports, post-market surveillance, published scientific literature, and regulatory communications. See Master Complaint ¶¶ 153-224, 568-576. Defendants nonetheless failed

to act as a reasonably prudent manufacturer would have acted by issuing adequate warnings and instructions to prescribers and patients, and instead continued to market Rybelsus and their other semaglutide products as safe, with only mild and transient gastrointestinal side effects. Upon information and belief, Defendants did not add any warning concerning severe gastrointestinal adverse reactions to the labeling of any of their semaglutide products until 2025, after Plaintiff's injury. See Master Complaint ¶ 447.

9. Failure to conform to express warranty (RCW 7.72.030(2)(b)). Defendants expressly warranted, through the Rybelsus labeling, package inserts, Medication Guide, product websites, advertising, promotional materials, and communications to prescribers, that Rybelsus was safe and effective for its intended and promoted uses and that its gastrointestinal side effects were mild to moderate and transient. These express warranties were made part of the basis of the bargain, related to material facts concerning Rybelsus, and proved to be untrue, because Rybelsus caused Plaintiff to suffer gastroparesis and persistent delayed gastric emptying. See Master Complaint ¶¶ 675-698.

10. Failure to conform to implied warranties (RCW 7.72.030(2)(c); Title 62A RCW). Rybelsus did not conform to the implied warranty of merchantability under RCW 62A.2-314 because it was not fit for the ordinary purposes for which such a drug is used and was not adequately labeled, and did not conform to the implied warranty of fitness for a particular purpose under RCW 62A.2-315 because Defendants knew of the particular purposes for which Rybelsus was prescribed and used, including the weight-management purpose for which Defendants promoted their semaglutide products, and Plaintiff and her physician relied on Defendants' skill and judgment in selecting the product. See Master Complaint ¶¶ 699-720.

11. Consumer expectations (RCW 7.72.030(3)). Rybelsus was unsafe to an extent beyond that which would be contemplated by the ordinary consumer. Neither Plaintiff nor an ordinary consumer would have expected that a once-daily tablet promoted as having mild and transient gastrointestinal side effects could cause gastroparesis and persistent delayed gastric emptying that continues after the drug is stopped.

12. Negligence, negligent undertaking, and negligent and innocent misrepresentation and marketing. Within her WPLA claim, Plaintiff further asserts that Defendants were negligent in the research, design, testing, post-market surveillance, labeling, marketing, advertising, promotion (including off-label promotion of their semaglutide products for weight loss), and sale of Rybelsus; that Defendants undertook to provide safety information, patient support, and prescriber education concerning Rybelsus and performed those undertakings negligently; and that Defendants negligently and innocently misrepresented, and failed to disclose, material facts concerning the safety and efficacy of Rybelsus to prescribers and consumers, including Plaintiff and her prescribing physician. See Master Complaint ¶¶ 381-393, 577-603, 801-849, 866-903.

13. Defendants' conduct described above proximately caused Plaintiff's harm. Rybelsus reached Plaintiff without substantial change in the condition in which it was manufactured and sold, and Plaintiff used Rybelsus as prescribed and in a manner that was reasonably foreseeable to Defendants. Had Defendants provided adequate warnings and instructions, Plaintiff's

prescribing physician would not have prescribed Rybelsus to Plaintiff, or would have prescribed it with instructions to discontinue the drug and seek evaluation at the first onset of persistent gastrointestinal symptoms, and Plaintiff would not have taken Rybelsus or would have discontinued it before developing gastroparesis.

14. As a direct and proximate result of Defendants' conduct in violation of the WPLA, Plaintiff suffered "harm" within the meaning of RCW 7.72.010(6), including gastroparesis and persistent delayed gastric emptying and their sequelae, physical pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, past and future medical expenses, lost income and earning capacity, and other economic and non-economic damages, including those set forth in paragraphs 16 through 18 of the Short Form Complaint.

15. This action is timely. Plaintiff's gastroparesis was diagnosed on November 7, 2023, and this action is commenced within three years of the time Plaintiff discovered, or in the exercise of due diligence should have discovered, the harm and its cause. See RCW 7.72.060(3).

16. Accordingly, pursuant to the WPLA, Plaintiff seeks to recover compensatory damages for all harm proximately caused by Defendants' conduct, together with interest, costs of suit, and all such other relief as the Court deems proper, and, to the extent permitted under the law applicable to Plaintiff's claims, exemplary and punitive damages.